Argued September 20, decided October 3, 1911.

## CANNON v. MILNER.

[117 Pac. 987.]

CANCELLATION OF INSTRUMENTS—EVIDENCE.

Evidence in an action to rescind a contract for the purchase of a half interest in a lease and furniture of a lodging house, on the ground of fraudulent representations of the seller, with cross-complaint seeking a foreclosure of the seller's equitable lien on the furniture, *held* sufficient to sustain a foreclosure decree.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by M. P. Cannon against Alice E. Milner to rescind a contract, the execution of which is alleged to have been induced by fraud; to enjoin the prosecution of any action based on the terms of the agreement; to direct a reimbursement of the money paid on account thereof; and to recover damages. The facts are that on September 27, 1909, the plaintiff, M. P. Cannon, entered into a contract with the defendant, Alice E. Milner, who then kept a lodging house in Portland, stipulating that in consideration of the payment of $3,000, of which sum $1,300 was received, she would sell and transfer to him an undivided half of all the furniture, etc., in the house, attaching an inventory thereof to the writing, and also to assign to him an undivided half interest in a lease of the premises. The remainder of the purchase price was to be paid in installments of $100 each, commencing October 1, 1909, and maturing monthly thereafter, and upon payment of the entire sum the defendant would perform her part of the agreement, but prior to the discharge of the debt she was to retain the title and estate as security for such payment. The parties were jointly to conduct the business in which the defendant had been engaged, each contributing one-half of the expenses incident thereto and receiving monthly an equal share of the net profits, and faithfully to labor to promote the

enterprise, but neither was to receive any compensation therefor, except such avails. The contract contained a clause as follows:

"Cannon hereby agrees to furnish a surety company bond in the sum of two thousand dollars ($2,000.00) for the payment by him of his portion of the rent of the said premises, or to furnish other satisfactory security therefor, and this agreement shall not be effective until such security has been provided."

Pursuant to the contract, plaintiff, on October 1, 1909, paid $100, the first installment of the remainder of the purchase price, and at the same time also advanced $225 on account of rent of the building for that month. The money received from the business for October, 1909, was $966.11, from which was paid $774,20 as the expenses of conducting the house, leaving $191.91, to one-half of which, or $95.95, plaintiff was entitled.

This suit was thereafter instituted, the plaintiff alleging in effect that the defendant, for the purpose of inducing him to enter into the agreement, falsely and fraudulently represented to him that she had the absolute right to transfer an undivided half interest in and to the leasehold estate in the premises of which she was the sole owner; that she was lawfully empowered to assign her interest or to sublet the same or any part thereof; that for the purposes of further persuading plaintiff to accede to the terms of the contract the defendant falsely and fraudulently represented to him that the monthly gross receipts from the building, for some time prior, had been above $900, while the net income was $400; that, relying upon such representations and having no means of ascertaining their falsity, plaintiff became a party to the contract, in complying with the terms of which he paid out $1,625, as hereinbefore stated, and also the sum of $300 for additional furniture for the building; that defendant had no right to assign the lease without first obtaining

the written consent of the lessors, which she never secured, nor was she the sole owner of the lease; that the net earnings of the business were not as she represented, and did not exceed $200 a month, as she well knew; that plaintiff, relying on such representations, performed labor and services at the building to the value of $700, and was otherwise damaged in the sum of $2,000; that unless restrained defendant will commence actions to recover the monthly installments of $100 each as they severally mature; and that plaintiff has no plain, speedy, or adequate remedy at law.

The answer denies the material averments of the complaint, and by way of cross-bill alleges that at all the times stated therein the defendant was the sole owner of all the furniture mentioned and the beneficial owner and holder of the lease, and at all times had been and then was able, ready, and willing to keep her part of the contract upon performance of the other part by plaintiff; that he has never furnished any bond as required; and that defendant has fully complied with all the terms of the agreement assumed by her. The equitable lien on the personal property is then set forth, and a strict foreclosure thereof sought.

The reply having put in issue the allegations of new matter in the answer, the cause was tried, resulting in a decree as prayed for in the answer, and plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the name of *Mr. Harry Yanckwich,* with oral arguments by *Mr. R. Sleight* and *Mr. Yanckwich.*

For respondent there was a brief with oral arguments by *Messrs. Flegel & Reynolds* and *Mr. John F. Logan.*

MR. JUSTICE MOORE delivered the opinion of the court.

The lease under which the defendant retained possession of the building was executed by Leo Friede and N. D.

Simon, the owners of the premises to T. J. Milner and his wife, the defendant herein, whereby the lessees were to retain the property for a term of four years from December 1, 1906, upon payment on the first of each month of $350 for the first and second years, and $400 a month for the third and fourth years. An option was granted to continue the term for another year at $450 a month. The demise stipulated that the lease should not be assigned, and the lessees covenanted to execute a mortgage upon certain real property which they owned in Multnomah County as security for the payment of the rent reserved.

In the contract executed by plaintiff, it is stated that the lease of the premises was then owned by the defendant. The attorney who prepared the contract for execution testified that without being informed in relation to the matter, and supposing that Mrs. Milner was the sole lessee of the premises, he made a written statement to that effect in the agreement. This declaration was not intentionally false, and plaintiff did not sustain any damage by reason thereof, for the testimony shows that, though the lease prohibited an assignment of any interest therein, the lessors were at all times ready and willing to consent to a transfer to him of the defendant's estate, or any part thereof, when he furnished a satisfactory undertaking, as agreed upon, that he would pay the rent as it matured, which bond he never obtained.

The plaintiff testified that Mrs. Milner represented to him, when he was negotiating with her for an interest in the property, that the net proceeds of the business was $300 or $400 a month. When the first monthly statement rendered showed that the remainder, after paying all disbursements, was only $191.31, Mrs. Milner denied that she made such representations, saying that she informed plaintiff that no books had been kept, wherein were noted the receipts or payments, but that all disbursements were

evidenced by checks drawn on a bank, the stubs of which were retained; that in order to disclose the expenses of the business she showed these stubs to him, and he examined them for several hours.

Mrs. Isabell Kragner and her sister, Chrissie Brown, severally testified that Mrs. Milner represented to her that the net income from the lodging house was $300 a month. If the testimony of these witnesses could be considered as corroborative of plaintiff's sworn declarations, their affirmations are rendered valueless by evidence of the plaintiff's influence over them, and by their apparent interest in his affairs. Without further commenting upon their testimony or adverting to the motives that seemed to prompt it, we are satisfied that in this case their evidence is unworthy of belief.

When plaintiff, as a witness, was cross-examined, the foundation for impeaching testimony was properly laid, and he thereupon denied that he made the statements imputed to him. To contradict his testimony in this particular, A. F. Flegel, who prepared the contract in question, testified that while the parties were negotiating the plaintiff called upon him, saying:

"I talked with Mr. Cannon about the details of the agreement, and I got practically all the information from him from which the agreement was drawn. I remember very particularly about talking to him about the profits that could be made from running the house, and Mr. Cannon said that Mrs. Milner was not making anything out of the place; that she was not running it right, and didn't know how to run it; and he would make a good thing out of it, he was satisfied, and it was good property."

It will be seen that Flegel's sworn declarations do not fix the sum of money which Cannon regarded as a sufficient monthly income to be derived from a careful management of the business. The plaintiff may have thought that $300 a month was not adequate. Though such conclusion is possible, we believe a general view of the whole

testimony of the plaintiff and his witnesses does not carry that degree of conviction that the testimony of the defendant and her witnesses affords.

It appears that Cannon paid $25 more than his share of the rent due for October, 1909. Some controversy exists as to whether or not such excess was given in lieu of furnishing the bond required. However, this may be, it is unimportant, for the payment having been made after the contract was executed cannot invalidate the original agreement. That payment was a proper matter to be considered, and the trial court decreed a credit therefor in case the plaintiff paid the remainder of the purchase price, his share of the rent and of the expenses, within the time limited.

We conclude the decree was correct; but, since its enforcement has been delayed by the appeal, the plaintiff will be allowed thirty days after the decree herein becomes final to comply with the terms imposed, and if he tenders into court the remainder of the purchase price and interest, one-half of the monthly rent and interest thereon, and also the compensation of a person who would have performed the service he could have rendered, and was required to furnish, he will be entitled to an accounting as a partner in the business, and become the owner of an undivided half of the personal property involved, including an assignment of an interest in the lease. In case he does not make such tender within the time prescribed, the defendant's equitable lien upon such property will be strictly foreclosed, and plaintiff will be barred of all right, title, or interest therein or thereto.

It follows that the decree should be affirmed, and it is so ordered.                              AFFIRMED.